# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

WILLIAM CHANDLER III,

          Petitioner,

vs.

UNITED STATES OF AMERICA,

          Respondent.

No. C08-4050-MWB
(CR04-4102-MWB)

**MEMORANDUM OPINION AND
ORDER REGARDING
PETITIONER'S § 2255 MOTION**

_____

## TABLE OF CONTENTS

**I. INTRODUCTION AND BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . 2
   **A. The Petitioner's Charges, Sentence and Appeal** . . . . . . . . . . . . . . . . . 2
   **B. The Petitioner's § 2255 Motion** . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**II. LEGAL ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
   **A. Standards For Relief Pursuant To § 2255** . . . . . . . . . . . . . . . . . . . . 3
   **B. Preliminary Matters** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
       **1.** *Need for an evidentiary hearing* . . . . . . . . . . . . . . . . . . . . . 6
       **2.** *Procedural default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
   **C. Ineffective Assistance Of Counsel** . . . . . . . . . . . . . . . . . . . . . . . . 7
       **1.** *Applicable Standards* . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
       **2.** *Chandler's guilty plea to conspiracy charge* . . . . . . . . . . . . . 9
       **3.** *Guilty plea to manufacturing and distributing charge* . . . . . . 13
       **4.** *Stipulation as to drug quantity* . . . . . . . . . . . . . . . . . . . . 17
   **D. Certificate Of Appealability** . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**III. CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

This case is before the court pursuant to petitioner William Chandler III's *pro se* Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody. Chandler claims that his trial and appellate counsel provided him with ineffective assistance in various ways. The respondent denies that Chandler is entitled to any relief on his claims.

## I.  INTRODUCTION AND BACKGROUND

### A.  The Petitioner's Charges, Sentence and Appeal

On October 12, 2004, an indictment (Crim. docket no. 1) was returned against petitioner William Chandler III, charging him with conspiring to distribute and manufacture 50 grams or more of methamphetamine, having previously been convicted of a felony drug offense, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846, and 851, distributing and manufacturing 50 grams or more of methamphetamine, having previously been convicted of a felony drug offense, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 851, and distributing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). On March 2, 2005, Chandler appeared before Chief United States Magistrate Judge Paul A. Zoss and entered a plea of guilty to Counts 1 and 2 of the indictment pursuant to a written cooperation plea agreement. Chandler was permitted to remain out of custody on pretrial release pending his sentencing. This court accepted Chandler's guilty plea on March 23, 2005 (Crim. docket no. 40). Chandler subsequently absconded. On October 18, 2005, he was arrested and taken into custody. On March 17, 2006, Chandler was sentenced to 126 months imprisonment on Count 1 and 126 months imprisonment on Count 2, the sentences to be served concurrently, and ten years of supervised release. On March 31, 2006, Chandler appealed his sentence (Crim. docket no. 71). His appellate counsel filed a brief under *Anders v. California*, 386 U.S.

738 (1967), with the Eighth Circuit Court of Appeals. On August 14, 2007, the Eighth Circuit Court of Appeals denied Chandler's appeal. *See United States v. Chandler*, 231 Fed. App'x 533, 534 (8th Cir. 2007).

## B. The Petitioner's § 2255 Motion

On June 16, 2008, Chandler filed his *pro se* Motion under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence (Civ. docket no. 1). In Chandler's § 2255 motion, he raises three claims. First, he contends that his counsel was ineffective for having him plead guilty to the charge of conspiracy to distribute methamphetamine. Second, Chandler claims that his counsel was ineffective in having him plead guilty to the manufacture of methamphetamine "with intent to distribute." Third, Chandler contends that his counsel was ineffective in having him stipulate to the drug quantity in his plea agreement. In its response to Chandler's motion, respondent United States argues that none of Chandler's claims are supported by the record.

## II. LEGAL ANALYSIS

### A. Standards For Relief Pursuant To § 2255

Turning to the legal analysis of Chandler's claims, in light of the evidence in the record, the court notes, first, that 28 U.S.C. § 2255 provides as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground [1] that the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255; *Watson v. United States,* 493 F.3d 960, 963 (8th Cir. 2007) ("Under 28 U.S.C. § 2255 a defendant in federal custody may seek post conviction relief on the ground that his sentence was imposed in the absence of jurisdiction or in violation of the Constitution or laws of the United States, was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."); *Bear Stops v. United States,* 339 F.3d 777, 781 (8th Cir. 2003) ("To prevail on a § 2255 motion, the petitioner must demonstrate a violation of the Constitution or the laws of the United States."). Thus, a motion pursuant to § 2255 "is 'intended to afford federal prisoners a remedy identical in scope to federal habeas corpus.'" *United States v. Wilson,* 997 F.2d 429, 431 (8th Cir. 1993) (quoting *Davis v. United States,* 417 U.S. 333, 343 (1974)); *accord Auman v. United States,* 67 F.3d 157, 161 (8th Cir. 1995) (quoting *Wilson*)

On the other hand,

> Section 2255 relief is not available to correct errors which could have been raised at trial or on direct appeal, absent a showing of cause and prejudice, *United States v. Frady,* 456 U.S. 152, 167-68, 102 S. Ct. 1584, 1594-95, 71 L. Ed. 2d 816 (1982), or a showing that the alleged errors were fundamental defects resulting in a complete miscarriage of justice. *See United States v. Smith,* 843 F.2d 1148, 1149 (8th Cir. 1988) (*per curiam*).

*Ramey v. United States,* 8 F.3d 1313, 1314 (8th Cir. 1993) (*per curiam*); *accord Johnson v. United States,* 278 F.3d 839, 844 (8th Cir. 2002) ("In order to obtain collateral review of a procedurally defaulted issue, [a § 2255 movant] must show 'either cause and actual prejudice, or that he is actually innocent.'") (quoting *Bousley v. United States,* 523 U.S. 614, 622 (1998), with citations omitted).

The "cause and prejudice" that must be shown to resuscitate a procedurally defaulted claim may include "ineffective assistance of counsel." *See Becht v. United*

*States*, 403 F.3d 541, 545 (8th Cir. 2005). Otherwise, "[t]he Supreme Court recognized in *Bousley* that 'a claim that "is so novel that its legal basis is not reasonably available to counsel" *may* constitute cause for a procedural default.'" *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001) (quoting *Bousley*, 523 U.S. at 622, with emphasis added, in turn quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)). "Actual prejudice" requires a showing that the alleged error "'worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Johnson*, 278 F.3d at 844 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1981), and explaining, further, that the movant must show that there is a substantial likelihood that, absent the error, a jury would have acquitted him of the charged offense). To establish "actual innocence," as an alternative way to resuscitate a procedurally defaulted claim, "'petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.'" *Id.* (quoting *Bousley*, 523 U.S. at 623). "'This is a strict standard; generally, a petitioner cannot show actual innocence where the evidence is sufficient to support a [conviction on the charged offense].'" *Id.* (quoting *McNeal v. United States*, 249 F.3d 747, 749-50 (8th Cir. 2001)).

The Eighth Circuit Court of Appeals will review the district court's decision on a § 2255 motion *de novo*, regardless of whether the district court's decision grants or denies the requested relief. *Compare United States v. Hilliard*, 392 F.3d 981, 986 (8th Cir. 2004) ("We review the district court's decision to grant or deny relief on a petitioner's ineffective assistance of counsel claim de novo.") (citing *United States v. White*, 341 F.3d 673, 677 (8th Cir. 2003)); *with United States v. Hernandez*, 436 F.3d 851, 854 (8th Cir. 2006) ("'We review de novo the district court's denial of a section 2255 motion.'") (quoting *Never Misses A Shot v. United States*, 413 F.3d 781, 783 (8th Cir. 2005)). However, "[a]ny underlying fact-findings are reviewed for clear error.'" *Hernandez*, 436

F.3d at 855 (quoting *United States v. Davis*, 406 F.3d 505, 508 (8th Cir. 2005)).

With these standards in mind, the court turns to analysis of Chandler's claims for § 2255 relief.

## B. Preliminary Matters

### 1. Need for an evidentiary hearing

"A district court does not err in dismissing a movant's section 2255 motion without a hearing if (1) the movant's 'allegations, accepted as true, would not entitle' the movant to relief, or '(2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Buster v. United States*, 447 F.3d 1130, 1132 (8th Cir. 2006) (quoting *Sanders v. United States*, 341 F.3d 720, 722 (8th Cir. 2003), with citation and quotation marks omitted); *see* 28 U.S.C. §2255. In this case, the court concludes that no evidentiary hearing is required on any issue, because the record conclusively shows that Chandler's allegations either cannot be accepted as true, because they are contradicted by the record, or that, even if his allegations were accepted as true, they would not entitle him to relief.

### 2. Procedural default

The respondent asserts that at least some of Chandler's claims are procedurally defaulted, because they were not raised on direct appeal. The court concludes, however, that the claims presented are not procedurally defaulted, because all are cast as ineffective assistance of counsel claims. The Eighth Circuit Court of Appeals has expressly recognized that a claim of ineffective assistance of counsel should be raised in a § 2255 proceeding, rather than on direct appeal, because it often involves facts outside of the original record. *See United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003) ("When claims of ineffective assistance of trial counsel are asserted on direct appeal, we

ordinarily defer them to 28 U.S.C. § 2255 proceedings."). Therefore, the court will consider Chandler's claims on the merits.

## C. Ineffective Assistance Of Counsel

### 1. Applicable Standards

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. CONST. AMEND. VI. Thus, a criminal defendant is constitutionally entitled to the effective assistance of counsel both at trial and on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir. 2003); *see also Steele v United States,* 518 F.3d 986, 988 (8th Cir. 2008). By the same token, "ineffective assistance of counsel" could result in the imposition of a sentence in violation of the Constitution or laws of the United States. 28 U.S.C. § 2255; *Bear Stops*, 339 F.3d at 781 ("To prevail on a § 2255 motion, the petitioner must demonstrate a violation of the Constitution or the laws of the United States."). As noted above, in the discussion of procedural default, the Eighth Circuit Court of Appeals has expressly recognized that a claim of ineffective assistance of counsel should be raised in a § 2255 proceeding, rather than on direct appeal, because it often involves facts outside of the original record. *See Hughes*, 330 F.3d at 1069 ("When claims of ineffective assistance of trial counsel are asserted on direct appeal, we ordinarily defer them to 28 U.S.C. § 2255 proceedings.").

As the Eighth Circuit Court of Appeals has explained, "'The applicable law here is well-established: post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his

defense.'" *United States v. Ledezma-Rodriguez*, 423 F.3d 830, 836 (8th Cir. 2005) (quoting *Saunders v. United States*, 236 F.3d 950, 952 (8th Cir. 2001), in turn citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)); *Davis v. Norris*, 423 F.3d 868, 877 (8th Cir. 2005) ("To prove that his counsel rendered ineffective assistance in violation of the Sixth Amendment, [the movant] must satisfy the two prong test outlined in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)," which requires the movant to "show that his counsel's performance was deficient" and that he was "prejudice[d]").

The "deficient performance" prong requires the movant to "show that his 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 687). That showing can be made by demonstrating that counsel's performance "'fell below an objective standard of reasonableness.'" *Wiggins v. Smith*, 539 U.S. 510, 522 (2003) (quoting *Strickland*, 466 U.S. at 688). There are two substantial impediments to making such a showing, however. First, "'[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Rice*, 449 F.3d at 897 (quoting *Strickland*, 466 U.S. at 690). Second, "[t]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (quoting *Strickland*, 466 U.S. at 689); *Davis*, 423 F.3d at 877 ("To satisfy this prong [the movant] must overcome the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance."). If the movant fails to show deficient performance by counsel, the court need proceed no further in its analysis of an "ineffective assistance" claim. *United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003).

Even if counsel's performance was "deficient," the movant must also establish

"prejudice" to overcome the presumption of reasonable professional assistance. *Ledezma-Rodriguez*, 423 F.3d at 836; *Davis*, 423 F.3d at 877.  To satisfy this "prejudice" prong, the movant must show "'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . [,] a reasonable probability [meaning] a probability sufficient to undermine confidence in the outcome.'" *Rice*, 449 F.3d at 897 (again quoting *Strickland*, 466 U.S. at 694); *Davis*, 423 F.3d 877 (same).  Thus, "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Pfau v. Ault*, 409 F.3d 933, 939 (8th Cir. 2005) (quoting *Strickland*, 466 U.S. at 693).  Although the two prongs of the "ineffective assistance" analysis are described as sequential, courts "do not . . . need to address the performance prong if petitioner does not affirmatively prove prejudice." *Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir. 1999) (citing *Pryor v. Norris*, 103 F.3d 710 (8th Cir. 1997)).

### 2.  *Chandler's guilty plea to conspiracy charge*

Chandler contends that his counsel was ineffective for allowing him to plead guilty to the charge of conspiracy to distribute methamphetamine.  Specifically, he argues that there was not a factual basis for his guilty plea to the conspiracy charge.  The record, however, belies this assertion.  "To convict a defendant of [a drug] conspiracy, the government must prove beyond a reasonable doubt the following elements:  (1) there was a conspiracy with an illegal purpose, (2) the defendant knew about the conspiracy, and (3) the defendant knowingly became part of it." *United States v. White,* 241 F.3d 1015, 1022 (8th Cir. 2001); *accord United States v. Rolon-Ramos,* 502 F.3d 750, 754 (8th Cir. 2007) ("To establish that a defendant conspired to distribute drugs under 21 U.S.C. § 846, the government must prove:  (1) that there was a conspiracy, i.e., an agreement to distribute the drugs;  (2) that the defendant knew of the conspiracy;  and (3) that the defendant

intentionally joined the conspiracy."); *United States v. Cordova,* 157 F.3d 587, 592 (8th Cir. 1998) ("To establish a drug conspiracy, the government must prove the existence of an agreement between two or more persons to violate federal narcotics law, the defendant's knowledge of the agreement, and the defendant's voluntary participation in the agreement."). Here, prior to his guilty plea to the conspiracy charge contained in the Indictment, Chandler entered into a written plea agreement in which he stipulated to the following facts:

A. Between about August 2003, and continuing through August, 2004, in the Northern District of Iowa and elsewhere, defendant William Chandler and others reached an agreement or came to an understanding to manufacture and distribute 50 grams or more methamphetamine mixture. The defendant voluntarily and intentionally joined the agreement or understanding to manufacture and distribute methamphetamine, either at the time it was first reached or at some later time while it was still in effect. At the time that the defendant joined in the agreement, he knew that the purpose of the agreement was to manufacture and distribute methamphetamine.

B. On or about August 5, 2004, in Iowa, defendant was in possession of items (including precursors) used in the manufacture of methamphetamine. Defendant knew he was and intended to be possession of these items, and he had or intended to manufacture methamphetamine with these items.

C. On or about August 5, 2004, in Sioux City, Iowa, defendant intentionally transferred an amount of methamphetamine to another person. At the time of transfer, defendant knew that he was transferring methamphetamine.

D. In the course of this conspiracy or as part of the same course of conduct or common scheme or plan as the offenses of conviction, defendant participated in the manufacture and distribution of at least 200 grams of methamphetamine mixture.

E. Defendant was previously convicted of possession of a controlled substance with intent to distribute, a felony, on or about May 18, 1981, in Woodbury County Iowa District Court.

Plea Agreement at ¶¶ 36(A)-(E). Moreover, the terms of Chandler's plea agreement in general and paragraph 36 in particular were the subject of the following colloquy between Chandler and Judge Zoss during Chandler's plea hearing:

| | |
|---|---|
| THE COURT: | Do you have a copy of that plea agreement in front of you? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Would you look at the initials next to each of the paragraphs that are -- it looks like WJC. |
| THE DEFENDANT: | Yes. |
| THE COURT: | Did you write those initials next to all of those paragraphs? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | On the last page of the plea agreement is a typed name, William Chandler, and above it is a signature, William J. Chandler. Did you sign the last page of the plea agreement? |

| | |
|---|---|
| THE DEFENDANT: | Yes, I did, sir. |
| THE COURT: | Do you understand that by initialing and signing the plea agreement you are agreeing to be bound by its terms and agreeing that the factual representations made in the plea agreement are true and accurate? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Have you read the entire plea agreement? |
| THE DEFENDANT: | Yes, I have. |
| THE COURT: | Do you understand all of its terms? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Mr. Denne, have you gone over the plea agreement with your client? |
| MR. DENNE: | Yes, Your Honor. |
| THE COURT: | And do you believe he correctly understands all of its terms? |
| MR. DENNE: | He does. |
| THE COURT: | The one thing I wanted to look at with you, Mr. Chandler, is if you turn to page 12, paragraphs 36A, B, C, D, and E continuing on to page 13, have you read those paragraphs carefully? |

| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Is every factual statement in those paragraphs true and accurate? |
| THE DEFENDANT: | Yes, sir. |

Plea Hearing Tr. at 15-16. The facts which Chandler admitted under oath in his plea colloquy were sufficient to convict him of conspiracy. The statements made by Chandler in open court are presumed to be true. *See United States v. Gonzalez-Mercado,* 808 F.2d 796, 800 n.8 (11th Cir. 1987). Following this exchange, Judge Zoss discussed with Chandler each of the elements of the conspiracy charge, as well as inquiring into the factual basis which would support each of those elements. Guilty Plea Tr. at 17-20. During this discussion, Chandler further admitted that a factual basis existed for each element of the conspiracy charge. *Id.* Thus, Chandler's testimony at his plea hearing, including his sworn statement in his plea agreement, established a factual basis for the conspiracy charge. Because the record in this case fully supports an adequate factual basis for Chandler's guilty plea to the conspiracy charge, Chandler cannot demonstrate that his counsel's conduct fell below the wide range of reasonable professional assistance in permitting him to plead guilty to that charge. *Ledezma-Rodriguez*, 423 F.3d at 836 (an ineffective assistance of counsel claim requires proof of deficient performance by counsel); *see also Strickland*, 466 U.S. at 687. Accordingly, the court rejects Chandler's claim that his counsel provided ineffective assistance for allowing him to plead guilty to the conspiracy charge.

### 3. *Guilty plea to manufacturing and distributing charge*

Chandler next contends that his counsel was ineffective for allowing him plead guilty to the charge of distributing or manufacturing 50 grams or more of methamphetamine. Chandler argues that he never intended to distribute any

13

methamphetamine and therefore there was no factual basis for his guilty plea to this charge. Chandler's counsel has explained his understanding of the factual background supporting Chandler's guilty plea to this charge:

> Among other things, Mr. Chandler admitted to the following in his post-Miranda interview: That he had manufactured methamphetamine at least five times in the last eighteen months, and each time he generated approximately one-half ounce. This admission alone put him over the 50 gram threshold. Furthermore, he admitted to supplying three other individuals with methamphetamine. One of those individuals was Ms. Frick, his co-defendant. Mr. Chandler admitted that when he was first supplying methamphetamine to Ms. Frick, he was giving her only one-half gram, but the amounts increased to 3.5 grams at a time.

Denne Aff. at ¶ 4, Prosecution Ex. 1. Chandler's counsel's belief that a factual basis existed for Chandler's guilty plea is fully supported by the record. As discussed above, during his plea hearing, Chandler admitted to the truth and accuracy of the factual admissions he made in his written plea agreement. In those admissions, Chandler conceded that he "participated in the manufacture and distribution of at least 200 grams of methamphetamine mixture." Plea Agreement at ¶ 36(D). During his plea hearing, Judge Zoss adequately explained to Chandler the elements of the charge and then explored the factual basis for it with him:

| THE COURT: | The government's alleging that at least some time during this period that you manufactured or distributed some methamphetamine. Do you understand that? |
|---|---|
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | And is it true that you either |

|                   |                                                                                                                    |
|-------------------|--------------------------------------------------------------------------------------------------------------------|
|                   | manufactured or distributed methamphetamine some time during that time period?                                     |
| THE DEFENDANT:    | Yes, sir.                                                                                                           |
| THE COURT:        | Second thing the government would have to prove to establish Count 2 is that you did so knowingly, intentionally, and voluntarily. Do you understand that? |
| THE DEFENDANT:    | Yes, sir.                                                                                                           |
| THE COURT:        | And is that true? Did you distribute and manufacture methamphetamine knowingly and voluntarily and intentionally?  |
| THE DEFENDANT:    | Yes, sir.                                                                                                           |
| THE COURT:        | Next thing the government would have to show is that this manufacturing or distributing occurred in Woodbury County, Iowa, to establish venue in this court. Do you understand that? |
| THE DEFENDANT:    | Yes, sir.                                                                                                           |
| THE COURT:        | And is that true?                                                                                                   |
| THE DEFENDANT:    | Yes, sir.                                                                                                           |
| THE COURT:        | And the final thing the government would have to establish is that the amount of methamphetamine you               |

|                    |                                                                                                    |
|--------------------|----------------------------------------------------------------------------------------------------|
|                    | manufactured or distributed was at least 50 grams. Do you understand that?                         |
| THE DEFENDANT:     | Yes, sir.                                                                                           |
| . . .              |                                                                                                    |
| THE COURT:         | And from what you said to me earlier, I understood you said you gave somebody some methamphetamine. I assumed it was distribution. Were you also involved in some part in the manufacturing process? |
| THE DEFENDANT:     | Yes, sir.                                                                                           |
| THE COURT:         | Was that actually cooking or getting precursors or what?                                           |
| THE DEFENDANT:     | Cooking.                                                                                            |
| THE COURT:         | And is that true for both the offenses charged in both Counts 1 and 2?                             |
| THE DEFENDANT:     | Yes, sir.                                                                                           |

Plea Hearing Tr. at 21-23.

Because the record in this case fully supports an adequate factual basis for Chandler's guilty plea to the charge of distributing or manufacturing 50 grams or more of methamphetamine, Chandler cannot demonstrate that his counsel's conduct fell below the wide range of reasonable professional assistance in permitting him to plead guilty to that charge. *Ledezma-Rodriguez*, 423 F.3d at 836; *see also Strickland*, 466 U.S. at 687. Accordingly, Chandler is not entitled to relief on this claim.

### 4.      Stipulation as to drug quantity

Chandler also contends that his counsel was ineffective in having him stipulate in his plea agreement to manufacturing and distributing at least 200 grams of methamphetamine.   Chandler asserts that he should never have been charged with manufacturing or distributing 200 grams of methamphetamine.  Chandler, however, was not charged with manufacturing or distributing 200 grams of methamphetamine but with distributing or manufacturing 50 grams or more of methamphetamine.  He pleaded guilty to that charge.  As a result of his prior felony drug conviction and the prosecution's notice of its intent to seek an enhancement on the basis of that conviction, Chandler faced a mandatory minimum sentence of 120 months incarceration regardless of whether he stipulated to less than 200 grams of methamphetamine.   In the absence of safety valve relief under 18 U.S.C. § 3553(f), the only situation in which a district court can depart below a mandatory minimum is on the prosecution's motion for substantial assistance, pursuant to 18 U.S.C. § 3553(e).[1]  *See United States v. Polanco,* 53 F.3d 893, 897 (8th Cir. 1995) (concluding that "[s]ection 3553(b) and guideline section 5K2.0 do not permit departure below the statutory mandatory minimum. . . . Without a section 3553(e) motion or the unconstitutional refusal of one, the district court had no authority to depart below the statutory minimum.") (citation omitted).  Thus, as Chandler's counsel explained in his affidavit, he concluded that Chandler's only viable strategy was to continue to cooperate with the prosecution in the hope that it would subsequently move for a downward departure:

> I do not recall specifically whether or not Chandler wanted to dispute that stipulation, but looking back, I can see why such a stipulation was made:   First, fighting for a lower drug

---

[1] Chandler's criminal history precluded him from being eligible for safety-valve relief.

guideline would have made no difference due to the ten year mandatory minimum. Even if level 28 was too high, when the three points for acceptance of responsibility are factored in, as well as his category III criminal history, he was still well below the mandatory minimum. (Level 25 + Category III=70-87 months). His only chance for a sentence below the mandatory minimum was to sign a cooperation plea agreement, where the government insists on agreement with their drug quantity estimate. Even if the quantity was too high, it made no difference in his sentence, so I advised him to sign the plea agreement and continue cooperating. He agreed with this strategy and signed the plea agreement. In any event, during the execution of the search warrant at Mr. Chandler's residence, 391 grams of white powder cutting agent were found, as well as 294 grams MSM, another cutting agent. Therefore, I believed there was a factual basis for translating the approximately 70 grams of methamphetamine he admitted to manufacturing in his post-Miranda statement into 200 grams of mixed methamphetamine.

Denne Aff. at ¶ 8, Prosecution Ex. 1. Given that Chandler was facing a minimum-mandatory 120 month sentence, his counsel's tactical decision was not unreasonable. Indeed, Chandler's counsel's cooperation strategy may well have worked but for Chandler's decision to abscond from pretrial supervision, which eliminated his chance to be sentenced below the mandatory minimum. Accordingly, Chandler cannot demonstrate that his counsel's conduct fell below the wide range of reasonable professional assistance in permitting him to stipulate to the drug quantity. *See Ledezma-Rodriguez*, 423 F.3d at 836. Alternatively, Chandler's ineffective assistance of counsel claim also fails because he cannot show that but for counsel's failure to object to the drug weight, the result of the proceedings would have been any different. Simply stated, even if counsel had successfully challenged the drug-weight calculations and the corresponding sentencing guidelines calculations, the court would still have been bound by the mandatory-minimum

sentence of 120 months on each count. *See Strickland,* 466 U.S. at 694; *see also United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (holding that in order to prevail on a ineffective assistance of counsel claim, petitioner must demonstrate "that it is reasonably probable that, 'but for counsel's unprofessional errors, the result of the proceedings would have been different . . .'") (quoting *Strickland*, 466 U.S. at 694); *Anderson v. Bowersox*, 262 F.3d 839, 841 (8th Cir. 2001) (same); *Wilson v. Armontrout,* 962 F.2d 817, 819 (8th Cir.) (same), *cert. denied,* 113 S. Ct. 383 (1992). Therefore, this ineffective assistance of counsel claim is also denied.

## D. Certificate Of Appealability

Denial of Chandler's § 2255 motion, as amended, raises the question of whether or not he should be issued a certificate of appealability for his claims therein. The requirement of a certificate of appealability is set out in 28 U.S.C. § 2253(c)(1), which provides, in pertinent part, as follows:

> **(c)(1)** Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
> * * *
> **(B)** the final order in a proceeding under section 2255.

28 U.S.C. § 2253(c)(1)(B); *accord* FED. R. APP. P. 22(b). To obtain a certificate of appealability on claims for § 2255 relief, a defendant must make "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2); *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000); *Mills v. Norris*, 187 F.3d 881, 882 n.1 (8th Cir. 1999); *Carter v. Hopkins*, 151 F.3d 872, 873-74 (8th Cir. 1998); *Ramsey v. Bowersox*, 149 F.3d 749 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997), *cert. denied*, 525 U.S. 834 (1998). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court

19

could resolve the issues differently, or the issues deserve further proceedings." *Cox*, 133 F.3d at 569. Moreover, the United States Supreme Court reiterated in *Miller-El* that "'[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller-El*, 537 U.S. Ct. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

The court finds that Chandler has not made a substantial showing of the denial of a constitutional right on his § 2255 claims. *See* 28 U.S.C. § 2253(c)(2). Specifically, there is no showing that reasonable jurists would find this court's assessment of Chandler's claims to be debatable or wrong, *Miller-El*, 537 U.S. at 338; *Cox*, 133 F.3d at 569, or that any court would resolve those issues differently. *Cox*, 133 F.3d at 569. Therefore, Chandler does not make the requisite showing to satisfy § 2253(c) on his claims for relief, and no certificate of appealability will issue in this case. *See* 28 U.S.C. § 2253(c)(2); FED. R. APP. P. 22(b).

## III. CONCLUSION

THEREFORE, for the reasons discussed above, petitioner Chandler's *Pro Se* Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, or Correct Sentence By A Person In Federal Custody (docket no. 1) is **denied in its entirety**. This case is **dismissed in its entirety**. No certificate of appealability will issue for any claim or contention in this case.

**IT IS SO ORDERED.**

**DATED** this 2nd day of December, 2009.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA